**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**JAMES HUMPHREY JR.,**

**Plaintiff,**

**v.** **CIVIL ACTION NO. 2:25-cv-780**

**REYES, et al.,**

**Defendants.**

***MEMORANDUM OPINION AND ORDER***

Before the Court is Defendant City of Virginia Beach's ("Virginia Beach") Motion to Dismiss Count II of Plaintiff James Humphrey, Jr.'s Complaint under Federal Rule of Civil Procedure ("FRCP") 12(b)(6). ECF No. 9 ("Mot."). The motion is fully briefed. ECF Nos. 10 ("Mem. Supp."), 11 ("Opp'n"), 12 ("Reply"). Upon review, the Court finds that a hearing is not necessary. *See* E.D. Va. Local Civ. R. 7(J). For the reasons stated herein, Virginia Beach's Motion to Dismiss Count II is **GRANTED WITHOUT PREJUDICE.**

## I. FACTUAL AND PROCEDURAL HISTORY

Humphrey worked at GBRS Group, LLC ("GBRS") as Shipping Manager where one of his responsibilities was handling shipments of firearms components. ECF No. 1 ("Compl.") ¶ 9. One day before his shift ended, Humphrey accidentally delivered a UPS package (the "Package") containing a firearm to the wrong shipping company—FedEx. *Id.* ¶ 10. GBRS conducted an internal search for the Package and found security footage of Humphrey leaving work with the Package. *Id.* ¶¶ 12–14.

On December 4, 2023, GBRS reported Humphrey's suspected theft to police. *Id.* ¶ 16. Nine minutes after GBRS' report, police officer Reyes arrived and spoke with Humphrey's supervisor

and other employees, who informed Reyes that Humphrey had taken the Package to his car. *Id.* ¶¶ 16–21, 23. Reyes reviewed the security footage of Humphrey leaving with the Package. *Id.* ¶ 20.

About 20 minutes after Reyes arrived, he detained Humphrey in police officer Heredia's vehicle. *Id.* ¶¶ 23–25. After Humphrey informed Reyes he had a concealed carry permit and his firearm, Reyes searched Humphrey, removed the firearm, and found a vaporizer pen containing marijuana. *Id.* ¶ 26–28.

Seven minutes after Reyes detained Humphrey, Reyes directed Heredia to take Humphrey to the Virginia Beach Police Department's ("VBPD") headquarters for interrogation. *Id.* ¶ 30. During interrogation, Humphrey explained he personally takes FedEx packages because they do not come to GBRS to pick up packages and acknowledged he mistakenly delivered the Package to the wrong shipping company. *Id.* ¶¶ 35–36. Reyes did not find Humphrey's explanation plausible and arrested him. *Id.* ¶¶ 37–38, 41. The Complaint alleges Reyes "falsely represented to [Humphrey] that possession of a vape pen while carrying a firearm constituted a felony." *Id.* ¶ 43.

Reyes presented three warrants to a magistrate judge for (1) Grand Larceny, (2) Possession of a Firearm While in Possession of a Schedule I or II Controlled Substance, and (3) Tampering with U.S. Mail, and he transported Humphrey to Virginia Beach's Correctional Center. *Id.* ¶¶ 42, 44. However, over an hour before Reyes arrested Humphrey, a UPS driver retrieved the Package and returned it to GBRS. *Id.* ¶ 45. Reyes was aware a UPS driver returned the package before he arrested Humphrey. *Id.* ¶ 47. Reyes asked the magistrate judge to disregard the warrants for grand larceny and tampering with U.S. mail but asked for a warrant for possessing a firearm while possessing a controlled substance. *Id.* ¶¶ 49–50. The magistrate declined to issue a warrant, finding Reyes lacked probable cause for the charge. *Id.* ¶ 51. After being held in custody for four hours, Humphrey was released and driven back to work with his belongings. *Id.* ¶ 52.

On December 4, 2025, exactly two years after the incident, Humphrey filed the instant Complaint against Reyes and Heredia, individually, and Virginia Beach, alleging the above. *See generally* Compl. Humphrey's Count II asserts intentional false arrest and false imprisonment against Virginia Beach. *Id.* He contends Virginia Beach is liable for the officers' misconduct under *respondeat superior* because the officers "were acting within the scope of their employment as VBPD police officers." *Id.* ¶ 91. The two officers filed separate answers to Humphrey's complaint, ECF Nos. 11, 16, and Virginia Beach moved to dismiss, *see generally* Mot.

## II. LEGAL STANDARD

Motions to dismiss under FRCP 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (citation omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Iqbal v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is "plausible on its face" if a plaintiff pleads facts that allow the court to reasonably infer the defendant is liable for the alleged misconduct. *Id.* While the Court accepts as true all well-pled factual allegations, it need not accept legal conclusions or "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). A motion to dismiss under FRCP 12(b)(6) can "reach the merits of an affirmative defense" if "all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

At this stage, Humphrey may amend his pleading "only with the opposing party's written consent or the court's leave." FRCP 15(a)(1)–(2). Leave to amend should be "freely give[n]" when justice requires. FRCP 15(a)(2). "Leave should be denied *only* when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the

amendment would be futile." *Edwards*, 178 F.3d at 242 (alteration in original) (internal citation and quotation marks omitted). An amendment is futile if it would not survive a motion to dismiss. *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019). Delay alone is not a sufficient reason to deny leave to amend. *Edwards*, 178 F. 3d at 242.

An amendment asserting a new claim or defense against the same defendant relates back if the alleged misconduct "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FRCP 15(c)(1)(B).

## III. DISCUSSION

Virginia Beach moves to dismiss under FRCP 12(b)(6) arguing sovereign immunity bars Humphrey's claims against it because the officers were performing a governmental function. Mot. 4. Humphrey acknowledges that the officers were performing a governmental function and that sovereign immunity applies to governmental functions. Opp'n at 4. However, he asserts the Supreme Court of Virginia has not addressed whether sovereign immunity extends to municipalities for intentional torts "committed by police officers acting without probable cause and outside the scope of lawful authority." *Id.* at 4–5. Humphrey contends the Court should wait until it has a "fuller record" to resolve this unsettled question and cannot address sovereign immunity at the 12(b)(6) stage because all facts necessary to the affirmative defense do not appear on the face of the complaint. *Id.* at 6–7.

Contrary to Humphrey's argument, the Supreme Court of Virginia has addressed whether sovereign immunity applies to intentional torts. In fact, the Supreme Court of Virginia adopted the Fourth Circuit's reasoning in concluding "a municipality is immune from liability for intentional torts committed by an employee in the performance of a governmental function." *Niese v. City of Alexandria*, 564 S.E.2d 127, 132 (Va. 2002) (citing *Carter v. Morris*, 164 F.3d 215, 222 (4th Cir. 1999)). Here, the Complaint specifically alleges the officers were acting within the scope of their

duties as Virginia Beach police officers, i.e., performing a governmental function. *Khattab v. Janowski*, No. 3:23-cv-737, 2024 WL 1889841, at *10 (E.D. Va. Apr. 30, 2024) (finding sovereign immunity applied and the inquiry "end[ed] nearly as soon as it beg[an]" because the complaint asserted the officers were acting within the scope of their employment). Therefore, Count II of the Complaint does not state a plausible claim against Virginia Beach for intentional false arrest or false imprisonment. Virginia Beach's Motion to Dismiss Count II is granted.

Humphrey contends he should be given leave to amend because his amendment would not be futile as the facts alleged in the Complaint could support a *Monell* claim against Virginia Beach. Opp'n at 8–12. Virginia Beach asserts any amendment would be futile given it would be barred by the two-year statute of limitations and unable to survive a motion to dismiss. Reply at 4.

Here, Humphrey filed his Complaint within the statute of limitations, and his alleged amendment would relate back because it concerns the same conduct, transaction, or occurrence—two Virginia Beach police officers detaining and arresting Humphrey with no probable cause. *Tiller v. Atlantic Coast Line R. Co.*, 323 U.S. 574, 581 (1945) (granting leave to amend and holding "[t]here is no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it."). In *Tiller*, the Supreme Court granted leave to amend when, although the proposed amended complaint asserted new claims and new facts, it related to the same general conduct, transaction, and occurrence. 323 U.S. at 581. Moreover, under *Monell v. Dep't of Soc. Servs.*, Virginia Beach could be held liable under § 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978). Because Humphrey's amended complaint would relate back

and Virginia Beach may be held liable under *Monell*, the Court will allow Humphrey to amend his complaint.

## IV. CONCLUSION

For the reasons set forth above, Virginia Beach's Motion to Dismiss Count II of the Complaint, ECF No. 9, is **GRANTED WITHOUT PREJUDICE**. Humphrey is **GRANTED** leave to amend the Complaint, within twenty-one (21) days of the date of entry of this Order.

The Clerk is **DIRECTED** to send a copy of this Order to the parties.

**IT IS SO ORDERED**.

Norfolk, Virginia

October 19, 2026

Raymond A. Jackson
United States District Judge